Please the court. Good morning, Your Honor. My name is Chad Carlock. I'm representing the appellant, Ms. Trista Stanley. She was a music student at California State University, Sacramento. This case involves a Title IX claim against the university. That's the remaining claim. It's the claim against the university based on deliberate indifference once they were made aware of sexual harassment that had taken place. Ms. Stanley was forced as a result of this to leave the university three different times. Well, once she left the university, she cannot have had any more hostile work environment, right? She came back. Yeah, but she eventually left. I mean, once she left, then the environment is no longer hostile as to her, right? When she left for good. Well, she still wanted to be there. That's not the point. When she left, she was no longer in the environment that she said was hostile. That's correct. All right? So at that point, why didn't her time start running? Well, perhaps as to the harassment claim against the person who was actually committing the harassment. The claim here is deliberate indifference against the university. So? At this point, when she finally left for good and was unable to come back because of the deliberate indifference. There's – that's the measure of liability, is deliberate indifference. That's not the offense. She had already reported this. The offense is the maintenance of a hostile work environment. Right. She had already reported this. Which you show against the government by showing they were deliberately indifferent. Yes. She had reported this before she left. But she knew their position by April of – I forgot the year. May – what, April of 2001. I mean, she knew that. She knew what their position was by that time. And she didn't do anything until after the statute had run. Well, there – that depends on when the statute started to run, number one, and how long the statute is, number two. Now, in terms of the – when the statute started to run, at the time she left for good in spring of 2000, she hadn't even yet formally submitted a complaint to the university. They didn't respond when she finally did make a formal complaint until January of 2001. In that response, the university said, yes, we find a violation of the policy. Appropriate action will be taken. Period. That's it. So she naturally assumed they meant what they said. And then she still wanted to go back in January of 2001, after she'd already been gone for almost a year now. But the professor's still there. If she went back tomorrow, she'd be right back in that hostile environment. So you're telling me that so long as the professor is there, 20 years from now, if she wants to go back, she still has a cause of action that she can file on the spot. Well, arguably – The clock never starts running. Arguably, the question is – well, when does it stop running, I guess, is the question. No. No, it's when does it start running. Right. And by your argument, it never starts until the school does something. Until they cease to be deliberately indifferent. Yes. And so they have to do something, something before that. So if they do not do something for 20 years, then it has to follow that the clock has not started and your client can sue 20 years from now. There's no statute that will prevent her from it. That would be my argument. I think – That's your argument? As to when it stops or starts running. Okay. Let's move on. You say there's two possible statutes of limitation here. One is a one-year and one is a two-year. Right. And the Silver v. Payne case is the one that deals with those. Personal injury is one year or was one year at the time. The red brief points out that the Sixth Circuit, the Third Circuit, the Eighth Circuit, the Eleventh Circuit, the other circuits that we look to frequently for guidance see this in terms of personal injury. You didn't file a reply brief, did you? No, I did not. Well, what's your answer to all these other circuits? I mean, is everybody wrong? No, I think the – generally speaking, the personal injury – I mean, the courts apply the personal injury statute of the state to all sorts of things. Which is one year. Which at the time was one year. And why isn't – why isn't that dispositive of your case here? Well, because this is a claim not against the individual, but against the government agency. But it's a claim for personal injury. That's the point. No, it doesn't make it a claim. But the personal injury statute is applied to. That's a choice. For personal injury. That is the statute that normally applies. So she gets one year. Unless it's against a claim where you have to submit under government code section 945.6. The unless. Where does that come from? It's still personal injury is personal injury is personal injury. Well, the – in government claims cases in California, the government code applies. And that's where 945.6 is. If there's a claim. But that assumes that the claim has to be presented. And that Title IX Federal claim does not have to be presented to the State. But this. What does that have to do with anything? Well, this cause of action, the facts, the related facts that all make up this claim, it wasn't just a Title IX claim that was eventually brought. If they had, you know, all these things have been filed there. In fact, the Eleventh Amendment claim, which we'll talk about if we have time, but I don't think we'll get there. The Eleventh Amendment dealt with the State law causes of action. If we had just done this without filing a claim, the first thing the State was going to say is, well, they didn't comply with the claim statute. And what the claim statute says is that in any claim, any claim, and that's presented. Yes. The State can either respond to the claim or not. If the State does respond in writing, then the statute of limitations is six months, not a year. But if they don't, then it's two years. And that's what happened in this case. The State did not respond. If the State wanted to cut off its liability, if they wanted to even shorten the statute of limitations below the year, all they have to do is say, we reject your claim. There's no question that as of April 2001, she knew of her problem with the State University. Right? That's correct. She filed a complaint against them. That's right. The claim was filed in April. But why doesn't that, at the outset, just at the outer limits, start the running of the statute? Well, if the – assuming that it does, then whether or not you file a claim, because – I mean, we just – I was just asked, that's not relevant, is it? But now it's being used to establish the running of the statute. But she knew as of – at the latest, she knew as of April 2001 that she had a problem which hadn't been solved to her satisfaction with the State University. That's correct. So within a year of that, she needed to have pursued litigation in court in order to be within the period of limitations, didn't she? No. Why? Because she had two years, because she had to file a claim. She did. In April. She did. And the State did not respond. So under that code, Section 945.6, any claim, the statute is two years. And what authority is there that a Federal claim has to be presented before it can be pursued in Federal court? She has to – she had to present the claim to pursue all of her theories together. She had pendant claims that, in fact – Forget that for the moment. We're talking about Title IX. What authority is there that a Federal claim under Title IX has to be presented to some State agency before it can be pursued in Federal court? The Federal claim, if it had been brought by itself, could have been brought without complying with the claim statute. Well, what authority do you have that you have to look at the whole ball of wax? It's claim by claim. One claim can be barred. Another claim cannot. Yes? Well, what the – what the Silva court says was that once the claim is presented, the section, referring to the Government Code section, is the only statute of limitations that applies to that claim. Now, the claim isn't – I mean, when we didn't file a claim, the claim didn't say I allege a Title IX violation. It says I allege these facts. What do we have here now in front of us, a Title IX violation? That's right. So here we are with a Title IX violation. Right. There's also the question still of the State law claim, but the court – the district court ruled on that, that the Eleventh Amendment barred that claim. Counsel, it seems to me that the whole basis of your claim, if I understand it, is this continuing impact that the Board of Trustees did not respond in some way to take care of this professor who was running amok. On page 19 of your opposition's brief, he cites cases in the Ninth Circuit that the continuing impact from past violations are not actionable and cites several Ninth Circuit cases. I've looked at those. It seems to me that he's correctly citing them for the position. Well, I think the Ellison case, for example, said that the continued presence of a harasser can constitute a – can constitute deliberate indifference. But even putting that aside, that's not – the continuing violation theory isn't necessary if you accept at the latest April 2001 and a two-year statute. May 23, 2002 is 13 months. Don't set it aside yet. I want to make sure I understand your position. On this continuing impact, you said earlier there's a continuing impact for even 20 years. She may go back and file her lawsuit. And I'm asking you, these Ninth Circuit cases seem to be contradictory to your position, and we, of course, have to rule based upon the Ninth Circuit. What's your position as regards to these cases that have been cited? Don't they undercut your position of the 20-year period of continuing impact? Yes, they do. I think at that point it becomes a factual question of whether or not, you know, the people that are – that might know of these facts are still there, you know, whether the environment as a whole remains – remains hostile just because that one person is still there 20 years later. But I think it's a – it is a case by – it would have to be a case-by-case analysis. So even in – even where we have held that the continuing impact of past violations are not actionable, you say they are actionable because? No. I think the difference is the continuing impact of past violations is different from walking right back into the same environment again now. That's the distinction. I see a distinction without a difference. You have the same board doing the same thing. You're just looking at it two different ways. They have continued to not do something or they will continue to do something if she comes back. I'm having difficulty in my mind figuring out how to deal with that issue. It seems to me the cases say I don't deal with it. There's no continuing impact. But I don't see where you've distinguished those cases, at least not in your brief and maybe not in your argument. Well, no. I think the continuing violation, I think those cases are pretty clear. I think that it's the difference between whether the plaintiff feels bad about what happened the last time she was there or whether she goes back in and she's subjected to treatment again. Has your client recovered anything at all for what happened? Nothing. Nothing. But you see, the problem I have with it, if nothing has changed, then she should have brought a lawsuit within the statute of limitations. That's why there's continuing impact cases that are there. And I don't quite come to grips with. I can say I'll write an opinion. You write it for me. The continuing impact decisions say that you can't have a continuing impact. But they don't apply in this case. The statute has not begun because? Well, this arguably the statute from the ones 20 years ago ran 18 years ago. Yes. But continued presence of a harasser can be deliberate indifference. So if she wanted to go back, it's been five years, she still hasn't gone back to school. If she wanted to go back tomorrow, her choice is be subjected to this environment or go somewhere else. But if they were deliberately indifferent, they were deliberately indifferent now, they were right afterwards, they didn't do anything, when does the statute start to run? Isn't it when she has awareness that they're not doing anything? Well, that's the difficulty is. That's your point. It never starts to run. Yeah. In January of 2001, as far as she knew, something was going to be done. At what point is a plaintiff supposed to know? Well, she obviously, my point is she obviously knew when she filed her complaint with the State. Didn't she? Well, I think in part, you know, one of the hopes in doing that is that, gee, maybe they'll see I'm serious and do something. Okay. Well, your time has expired. Thank you. Thank you. Mr. Carlock. Mr. Thompson. Thank you. May it please the Court. My name is Pete Thompson. I represent the Board of Trustees of the California State University. I believe that a lot of the issues that the Court is faced with in this particular case are well settled in Ninth Circuit precedent. However, one issue which is not is the statute of limitations that applies to Title IX cases. I cited in my brief that there are four circuits, the Third, Sixth, Eighth, and Eleventh, which have all held that the personal injury statute of limitations for the State applies to Title IX cases. The Ninth Circuit has looked at those circuits in the past for guidance. And I believe that, at least tacitly, this Court has embraced the personal injury statute of limitations in civil rights cases in their holding in Taylor v. Regents of the University of California, which was a Title VI claim in which it cited to the Sixth Circuit holding that the personal injury statute of limitations applied in that particular case. As this Court well knows, Title IX was patterned after Title VI. They are virtually identical in all respects with the exception as to who they apply to, Title VI applying to recipients of federal funds and programs or activities and Title IX applying to educational institutions that receive federal funding. That's pretty much the answer to that issue, isn't it? I believe it is, Your Honor. And moving on from that, then, would be the point in time that the statute of limitations begins to run in this particular case. And as I've pointed out in my brief, I believe there are four legally sufficient  For sake of argument, the district court chose the latest in time, and that was the April 27, 2001, filing by the plaintiff with the Board of Control, at which point she filed all of her claims, including her federal claims, and admits in her brief that that included her 1983 claim, which seems to no longer be at issue, and her Title IX claim. And if you apply the one-year statute of limitations from that point forward, her filing of her complaint, May 23, 2003, is longer than the one-year statute of limitations. With respect to counsel's claim that the government code, the California Tort Claims Act, somehow usurps the supremacy clause of the federal Constitution, I know of no authority for that. The California Supreme Court in Williams v. Horvath has, in fact, recognized that the California Tort Claims Act has no applications to federal civil rights claims. And this Court has, in at least three published decisions, said that the California Tort Claims Act statute of limitations does not apply to a federal claim. I believe that dispasses with the second issue. The final issue would be the Eleventh Amendment bar to plaintiff's State law causes of action. What we have is a number of tort claims, negligent infliction of emotional distress, intentional infliction of emotional distress, assault and battery, claims of that nature. And the only thing I've heard for somehow expanding the statute beyond the one-year is this continuing impact. And the plaintiff's claim that she didn't know when the deliberate indifference accrued, well, that has not an element of any of these California tort claims. Deliberate indifference does not come into play in any of those claims. And so I would submit that although the district court was generous in applying the April 2001 statute of limitations to the State law causes of action as well, in December of 1999, when she goes to the university and complains of sexual harassment, she's aware of all facts necessary to start her clock ticking right then and there. As far as the continuing impact, I believe that the Ninth Circuit precedent is also clear that the continuing impact in past violations is not actionable. And the fact that the plaintiff left the university for the last time in the spring of 2000 and never returned seems to me to supplant any continuing violation type of argument that she may make. I have nothing further to request the panel to express. I don't think that was quite his argument. I think he conceded that the Ninth Circuit cases of continuing impact govern us. But if I understand, his argument is that if she goes back today, the environment has not changed. And so when she goes back today, her cause of action can start then because they have continued, because the environment has not changed. That is, the professor is still there. And I understand that. And I'm not sure I've properly stated it, but you listened as best as I did. And I'd like to have you tell me why he's wrong. Well, the case that is cited to you for the proposition that the individual's presence in the environment can itself create a hostile work environment was Ellison v. Brady. And that was a sexual harassment case under Title VII. And I don't think that this Court or any other court that I'm aware of has ever held that an individual's continued presence per se constitutes a hostile environment. In such a world, you could never, ever remedy sexual harassment without firing the alleged perpetrator of the harassment. Moreover, she could go back tomorrow and have a whole new cause of action simply by his presence. That's exactly right. And the question is whether the university takes appropriate corrective actions so that when she does come back into the environment, that it's not a hostile work environment. We see that in the workplace every day where there are a myriad of sexual harassment claims where the employer has an obligation under the law to make that environment a non-hostile working environment. And there's a number of ways you can do that. There's formal discipline. There's informal discipline. There's suspensions. There's demotions. And in this particular case, I would point out to the Court, excerpts of Record 8, the plaintiff does not really plead deliberate indifference in this case. In fact, she says to you that in June of 2001, the university told me they took appropriate corrective action. That's not deliberate indifference. Two paragraphs later, in paragraph 28, she says, I didn't know until after I filed this complaint that they had taken corrective action. It seems to me that what she's complaining about is that nobody put any money in her pocket and that it's not deliberate indifference under the law if she disagrees with the remedial action that they took. So I don't accept the premise of his argument that the environment would have been the same had she returned to school the next semester. All right. Thank you very much. Counsel, your time has expired, so the matter just argued will be submitted. We'll next hear argument in United States v. Cox.
judges: Wallace, Trott, Rymer